UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

**FILED**

SEP 28 2007



CLERK

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| TOM BRAUN, | \* | CIV. 06-4053 |
| | \* | |
| Complainant, | \* | |
| | \* | |
| vs. | \* | MEMORANDUM OPINION |
| | \* | AND ORDER RE: |
| DAVISON COUNTY SHERIFF | \* | SUMMARY JUDGMENT |
| AND DEPARTMENT, | \* | |
| | \* | |
| Respondents. | \* | |
| | \* | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Plaintiff, Tom Braun, brought this pro se action under 42 U.S.C. § 1983 and the Americans with Disabilities Act. Pending before the Court is Defendant's Motion for Summary Judgment. Doc. 22. For the reasons stated by the Court at the September 24, 2007, motions hearing and the reasons stated in this Memorandum Opinion, Defendant's Motion for Summary Judgment (Doc. 22) is granted.

## FACTUAL AND PROCEDURAL BACKGROUND

On November 12, 2005, at approximately 11:40 p.m., James Lentsch, a deputy with the Davison County Sheriff's office, received a radio call from the Mitchell Police Department Dispatch advising Deputy Lentsch that a person had been reported walking westbound on Interstate 90 near Mitchell, South Dakota. When Deputy Lentsch responded to the call, he discovered Plaintiff standing near the side of I-90 holding a sign with the word "Rapids" on it. Deputy Lentsch approached and attempted to speak with Plaintiff. Deputly Lentsch found Plaintiff to be unresponsive and confused. According to Lentsch, Plaintiff appeared disoriented and was unable to tell Deputy Lentsch where he was or what day or month it was.

Plaintiff states that he was attempting to hitchhike home and that because of a seizure condition and because of having been without his medication for eight months, he communicated in broken language that he had "to get home to get chickens in, feed rabbits and dogs." Deputy

Lentsch has stated in his affidavit that he believed Plaintiff was a hazard to traffic as well as to himself, and as a result he took Plaintiff into protective custody and brought him to the Davison County Jail in Mitchell, South Dakota. While he was at the Davison County Jail, the jail staff perceived Plaintiff as continuing to exhibit unusual behavior

While in custody, Plaintiff also advised jail staff that he was supposed to be on a prescription medication, Tegretol, but that his doctor would not refill his prescription because Plaintiff had missed an appointment. Plaintiff told the jail staff that he talked "normal" when he was on Tegretol. Kate Jorgensen, MS, of Dakota Counseling Institute was asked to perform an emergency mental evaluation on Plaintiff on November 13, 2005. After performing this evaluation, Jorgensen noted that Plaintiff was displaying "incoherent thought process and loose associations." In addition, Jorgensen noted that Plaintiff told her that he had been off his medication since December of 2004 and that he wanted to feel "normal" again. Plaintiff also told Jorgensen that he would agree to a voluntary commitment at Avera McKennan Hospital in Sioux Falls for a psychiatric evaluation. Based upon this conversation with Plaintiff, Jorgenson recommended that Plaintiff be transported to Avera McKennan Hospital. After meeting with Jorgenson, however, Plaintiff changed his mind and informed jail staff that he would not agree to a voluntary commitment and that he wanted to get back on the highway and get a ride.

After Plaintiff changed his mind regarding the voluntary commitment, Deputy Lentsch filed a Petition for Emergency Commitment pursuant to SDCL Ch. 27A-10. On November 14, 2005, the Chairman of the Davison County Board of Mental Illness issued an "Emergency Order for Examination" ordering that Plaintiff be examined by a qualified mental health professional to determine whether he was dangerously ill as defined by SDCL 27A-1-1. Later that same day, Plaintiff was examined by a mental health professional with Dakota Counseling Institute, who reported Plaintiff's Present Mental Condition as actively psychotic with auditory and visual hallucinations. Based upon the report, the Chairman of the Davison County Board of Mental Illness issued an "Emergency Order for Commitment" directing that Braun be committed to the Mickelson Center in Yankton, South Dakota for inpatient treatment.

Plaintiff maintains that on November 12, 2005, he was in no danger, traveling the only way he could and causing no trouble to anyone. Plaintiff also maintains that he requested Tegretol and that the deputy sheriffs told him that a doctor would be arriving to give him his medication even

2

though they knew no doctor was coming to give him his medication. A physician from the Mikelson Center in Yankton placed Plaintiff on Tegretol and another physician has continued to prescribe Tegretol to Plaintiff since Plaintiff's discharge from the Yankton facility.

## Principles of Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

Once the moving party has met its burden, the non-moving party may not rest on the allegations of its pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 257; *City of Mt. Pleasant v. Associated Elec. Coop., Inc.*, 838 F.2d 268, 273-74 (8th Cir. 1988). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment should not "be viewed as a disfavored procedural shortcut, but rather as an integral part of [our rules] as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." *Id.* at 327.

## WHETHER DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CAUSES OF ACTION UNDER 42 U.S.C. § 1983?

## No Respondeat Superior Liabililty

Although Plaintiff names the Davison County Sheriff and Department as defendants, his

allegations relate only to the deputy sheriffs with whom he had contact and who worked under the sheriff and were employed by the County. Section 1983, however, will not support a claim based on a respondeat superior theory of liability. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 (1978). Even if Plaintiff had named the deputies as defendants, they would not have been liable under 42 U.S.C. § 1983 for the reasons set forth in this opinion.

## Failure to Provide Tegretol

Plaintiff complains that while he was confined at the Davison County Jail, the jail staff failed to dispense to him the prescription medication Tegretol. A prisoner's allegation of inadequate medical attention has been recognized as a potentially viable claim for a violation of the Eighth Amendment's prohibition against cruel and unusual punishment, via a § 1983 cause of action. *See Estelle v. Gamble*, 429 U.S. 97 (1976). To state such a cause of action, the prisoner must sufficiently allege "deliberate indifference" to a prisoner's "serious illness or injury." 429 U.S. at 105. "This conclusion does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.*

With regard to the "deliberate indifference" requirement, the courts have made clear that mere negligence or medical malpractice is not enough. 497 U.S. at 107. "The prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995). Also prison officials may also avoid liability if they "responded reasonably to the risk, even if the harm ultimately was not averted." *Liebe v. Norton*, 157 F.3d 574, 577 (8th Cir. 1998).

To prevail on a claim of deliberate indifference, a plaintiff must prove: (1) that he suffered objectively serious medical needs and; (2) that the prison officials actually knew but deliberately disregarded those needs. *See Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997). To show deliberate indifference, the plaintiff must show prison officials "knew of, yet disregarded, an *excessive* risk to [his] health." *Logan v. Clarke*, 119 F.3d 647, 649 (8th Cir. 1997). In addition, to avoid summary judgment an inmate alleging that a delay in medical treatment constitutes a constitutional deprivation must produce medical evidence to establish that the delay had a detrimental effect. *See Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006); *Crowley v. Hedgepeth*,

4

109 F.3d 500, 502 (8th Cir. 1997). Plaintiff has failed to make the required showings.

It is undisputed that Plaintiff had no valid prescription for Tegretol at the time he was taken to the Davison County Jail and the jail officials therefore had no valid prescription to have filled. It is also undisputed that it was recommended that Plaintiff be transported to Avera McKennan Hospital and that the deputy sheriffs would have transported Plaintiff there if Plaintiff had not refused to go. Finally, Plaintiff concedes that he had been without Tegretol for eight months, and has provided no evidence that an additional two to three day delay in getting the medication had a detrimental effect upon him. For these reasons, summary judgment for the Defendants is appropriate on Plaintiff's Eighth Amendment claim.

## Claims Relating to Emergency Commitment

Plaintiff claims that in submitting the petition for emergency commitment, the Deputies "swore falsely that Braun was severely mentally ill and a danger to self or others." Liberty from bodily restraint is protected by the Due Process Clause of the Fourteenth Amendment, and this Constitutionally protected liberty interest is implicated in involuntary commitment proceedings. *See Collins v. Bellinghausen*, 153 F.3d 591, 596-97 (8th Cir. 1998). However, state actors who initiate emergency commitment proceedings are entitled to qualified immunity so long as their actions are objectively reasonable. For the reasons set forth below, the deputy sheriffs and others involved in Plaintiff's emergency commitment proceedings were entitled to qualified immunity.

## Qualified Immunity

State actors are "protected by qualified immunity so long as 'their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" *Gregoire v. Class*, 236 F.3d 413, 417 (8th Cir. 2000) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)). The Eighth Circuit has established the following three part test to determine whether a plaintiff may overcome qualified immunity: "[T]he plaintiff must 'assert a violation of a constitutional or statutory right; that right must have been clearly established at the time of the violation; and, given the facts most favorable to the plaintiff, there must be no genuine issues of material fact as to whether a reasonable official would have known that the alleged action indeed violated that right.'" *Gregoire* at 417 (quoting *Liebe v. Norton*, 157 F.3d 574, 577 (8th Cir. 1998)).

5

The sheriff deputies acted in an objectively reasonable manner in asserting that Plaintiff would constitute a danger to himself or others if allowed to remain at liberty. When Deputy Lentsch found Plaintiff, Plaintiff was standing near the Interstate and appeared disoriented, confused, and was to some degree incoherent. The staff at the Davison County Jail also perceived Plaintiff as exhibiting signs of mental illness in his actions and speech. Plaintiff himself characterizes his speech at the time as "broken seizure words" and "broken word slow, struggling, word response." Both Deputies Lentsch and Kulm acted reasonably in determining that Plaintiff should be examined by a qualified mental health professional and by initiating emergency commitment proceedings. Their concerns were later validated by the findings of the qualified mental health professional and the Order issued by the Chairman of the Davison County Board of Mental Illness.

A reasonable official would not have known that he was violating any of Plaintiff's Constitutional rights with regard to initiating the involuntary commitment proceedings. Likewise, a reasonable official would not have known that he was violating any of Plaintiff's Constitutional rights with regard to not providing Plaintiff with Tegretol when Plaintiff lacked a valid prescription for the same. In fact, in neither of these instances were Plaintiff's Constitutional rights violated. Defendants are entitled to qualified immunity with regard to both Section 1983 claims.

## WHETHER DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT WITH REGARD TO PLAINTIFFS CLAIM UNDER THE AMERICANS WITH DISABILITY ACT?

Plaintiff asserts a claim under the Americans with Disabilities Act (ADA) based upon the failure to provide him with Tegretol. Title II of the ADA, 42 U.S.C. § 12131 *et seq.*, prohibits qualified individuals with disabilities from being excluded from participation in or the benefits of the services, programs, or activities of a public entity. Prisons and jails are "public entities" covered by Title II of the ADA. *See Pennsylvania Dept. of Corrections v. Yeskey*, 524 U.S. 206 (1998). To establish a prima facie claim under Title II of the ADA, a plaintiff must show: (1) that he is a person with a disability as defined by statute; (2) that he is otherwise qualified for the benefit in question; and (3) that he was excluded from the benefit due to discrimination based upon disability. *Randolph v. Rodgers*, 170 F.3d 850, 858 (8th Cir. 1999). In this case, Plaintiff has provided no evidence that the failure to provide him with Tegretol or a physician who could prescribe the Tegretol was due

6

to discrimination based upon disability.  For this reason Defendants are also entitled to summary judgment on Plaintiff's ADA claim.

Accordingly,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment (Doc. 22) is granted with regard to all of Plaintiff's claims.

Dated this _28__ day of September, 2007.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK

By: _____ Deputy

7